UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES AWUSIN INKO-TARIAH,

Plaintiff,

v.

Case No. 1:22-cv-02751 (TNM)

UNITED STATES POSTAL SERVICE,

Defendant.

## MEMORANDUM OPINION

After decades of allegedly poor service, a man sued the U.S. Postal Service for breach of contract, mail mishandling, mail fraud, and constitutional violations.  But the Court lacks jurisdiction over his contract, tort, and constitutional claims for damages.  And neither may the Court grant Inko-Tariah injunctive relief as he points to no waiver of sovereign immunity.  But even if he did, he states no claim.  So the Court will dismiss Inko-Tariah's Complaint.

**I.**

Charles Awusin Inko-Tariah served many years in prison for what he terms a "subway arson havoc incident."  Compl. at 1, ECF No. 1-1.  While in prison, he claims that he had various problems with his mail:  Twice, staff at the prison's mailroom confiscated "prized manuscript[s]" that had been sent to him.  *Id.* at 5.  And other "incoming and outgoing mails" failed to reach their destination over twenty times.  *Id.*  When he complained about that, prison staff "presided over an illegal kangaroo court and extrajudicially sentenced [him] to death . . . via poison placed on his foods [and] toxic fumes released in his cell."  *Id.*

Inko-Tariah's mail troubles continued after he was released.  According to him, last year he tried to mail his self-published book, *American Evil Empire: Rumbling at the Jungle*, to a journalist.  *Id.* at 2.  Even though Inko-Tariah sent the book "priority mail/certified mail," he

1

never received a return receipt.  The first time he followed up with the Postal Service, it told him that his return receipt was lost and to check back later.  *Id.* at 3.  The next time, the Postal Service told him that its "website was 'down.'"  *Id.*  And the time after that, it told him that his package had been delivered in December 2021.  *Id.* at 3–4.  But when Inko-Tariah checked the tracking number, he saw that the delivery date had been "falsified and backdated to October 2021," nearly two months before he had sent it.  *Id.* at 4.

The saga did not stop there.  In 2021, Inko-Tariah's other "important legal mail . . . never reached its destination."  *Id.* at 3–4.  And, he adds, the Postal Service may have "colluded with [other] government agencies," including the FBI, CIA, DHS, and NSA.  Pl.'s MSJ at 4, ECF No. 6.

Upset, Inko-Tariah sued the Postal Service in the Superior Court of the District of Columbia for breach of contract, "mail mishandling," and "mail fraud."  *See* Compl. at 1.  And he claims that the Postal Service violated his First, Fourth, and Fifth Amendment rights "to be free from unreasonable search and seizure without due process of law."  *See* Pl.'s Opp'n at 1, ECF No. 9.[1]  Inko-Tariah asks for $1.5 million in damages.  Plus, he wants an injunction requiring the Postal Service to stop stealing and to return his mail.  *Id.* at 2.

The Postal Service removed the case to this Court and then moved to dismiss under Federal Rules 12(b)(1) and 12(b)(6).  Mot. to Dismiss, ECF No. 4.  The Court denied the Postal Service's motion without prejudice because it had failed to address Inko-Tariah's constitutional

---

[1]  Inko-Tariah also cites "U.S.C. 1708," presumably referring to 18 U.S.C. § 1708, a criminal statute proscribing mail theft.  Opp'n at 1.  But that provision does not provide a cause of action because it is a "bare criminal statute, with no other statutory basis for inferring that a civil cause of action exists."  *Lee v. USAID*, 859 F.3d 74, 77–78 (D.C. Cir. 2017) (cleaned up).

claims or request for injunctive relief.  *See* Order, ECF No. 11.  The Postal Service then filed a

renewed motion to dismiss.  *See* Renewed Mot. to Dismiss, ECF No. 12.

## II.

To survive the Postal Service's motion to dismiss under Rule 12(b)(1), Inko-Tariah must

show that this Court has jurisdiction.  *Georgiades v. Martin-Trigona*, 729 F.2d 831, 833 n.4

(D.C. Cir. 1984).  When deciding a 12(b)(1) motion, the Court presumes that it lacks jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Though the Court takes

all Inko-Tariah's factual allegations as true, it may also consider other undisputed facts in the

record.  *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

To survive the Postal Service's motion to dismiss under Rule 12(b)(6), Inko-Tariah must

"state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(cleaned up).  To do that, he must plead facts "that allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.*  The Court must take those

facts as true and draw all reasonable inferences in Inko-Tariah's favor.  *L. Xia v. Tillerson*, 865

F.3d 643, 649 (D.C. Cir. 2017).  But the Court need not credit legal conclusions disguised as

factual allegations.  *Iqbal*, 556 U.S. at 678.

Because Inko-Tariah represents himself, the Court holds his Complaint to a "less

stringent standard[]" than one drafted by a lawyer.  *Raven v. Sajet*, 334 F. Supp. 3d 22, 28

(D.D.C. 2018).  And the Court must consider all Inko-Tariah's factual allegations, whether

contained in the complaint or other filings.  *Id*.

## III.

The Postal Service moves to dismiss under Rule 12(b)(1) and Rule 12(b)(6).  The Court

agrees that it lacks jurisdiction over Inko-Tariah's tort, contract, and constitutional claims to the

extent that he seeks money damages.  So it will dismiss those claims.

**A.**

Start with Inko-Tariah's tort and contract claims.  The Postal Service claims that the

Court lacks jurisdiction over those claims because the Superior Court lacked jurisdiction to hear

them in the first place.  And because the Superior Court lacked jurisdiction, the Postal Service

says, this Court does too.  The Court agrees.  To the extent that Inko-Tariah seeks money

damages for the Postal Service's torts or the Postal Service's breaches of its contracts, the Court

lacks jurisdiction under the doctrine of derivative jurisdiction.

The doctrine of derivative jurisdiction holds that "when a federal defendant removes a

case under Section 1442, the federal court may hear the plaintiff's claims only if the state court

had jurisdiction to hear the those claims." *Williams v. Perdue*, 386 F. Supp. 3d 50, 54 (D.D.C.

2019); *see also Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co.*, 258 U.S. 377, 382 (1922)

("If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court

acquires none.").  For purposes of Section 1442, the D.C. Superior Court is a state court.

*Williams,* 386 F. Supp. 3d at 54, n.2.  So—perhaps counterintuitively—a case removed to a

district court must be dismissed for lack of jurisdiction even if the district court would have had

jurisdiction had the case been initially brought to it.  *Id.*  That is so for Inko-Tariah's tort and

contract claims for damages.

To sue the Postal Service—an agency of the United States—for money damages, Inko-

Tariah needs to point to a waiver of sovereign immunity because the United States is immune

from suit unless it has waived its sovereign immunity.  *United States v. Sherwood*, 312 U.S. 584,

586 (1941).  The United States has waived its immunity to some tort suits for money damages

under the Federal Tort Claims Act.  28 U.S.C. § 1346(b).  And it has done the same for contract

claims in the Tucker Act. 28 U.S.C. § 1491.

But here, neither waiver allowed Inko-Tariah to sue in Superior Court.  Federal district

courts have exclusive jurisdiction over Inko-Tariah's tort claims, and the Court of Federal

Claims has exclusive jurisdiction over his contract claim for money damages.  *See* 28 U.S.C.

§ 1346(b)(1) (tort claims against the Government); *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th

1099, 1106 (D.C. Cir. 2022) (contract claims against the Government for over $10,000).  So, on

removal under 28 U.S.C. § 1442, the Court lacks jurisdiction over those claims.

*Tort claims for damages.*  In his Complaint, Inko-Tariah accuses the Postal Service of

two torts: "mail mishandling and mail fraud."  Compl. at 1, ECF No. 1-1.  But federal district

courts have exclusive jurisdiction over such claims to the extent Inko-Tariah wants money

damages.  *See* 28 U.S.C. § 1346(b)(1) ("[T]he district courts . . . shall have exclusive jurisdiction

. . . on claims against the United States, for money damages . . . for injury or loss of property.");

*Merkulov v. United States Park Police*, 75 F. Supp. 3d 126, 129 (D.D.C. 2014).  Because federal

district courts have exclusive jurisdiction over Inko-Tariah's tort claims, the Superior Court had

no jurisdiction.  And because this case was removed under Section 1442, this Court lacks

jurisdiction too because of derivative jurisdiction.

*Breach-of-contract claim for damages*.  Inko-Tariah also alleges that the Postal Service

has repeatedly breached contracts.  Compl. at 6.  The Postal Service counters that this contract

claim is just a tort claim repackaged.  *See* Ren. MTD at 10 ("[D]espite the Complaint's

characterization of one or more damages claims in this case as for breach of contract, the

allegations are for tortious conduct.").  And the Postal Service points to courts that have treated

contract claims against the Postal Service as tort claims under the FTCA.  *Id.*

The Court is not so sure.  Inko-Tariah calls his claim one for "breach of contract."
Compl. at 1.   And that theory has at least some basis in his factual allegations; he contracted
with the Postal Service to deliver his package and send him a return receipt.  According to him, it
did neither.  *Id.* at 2–4.

But, in the end, it does not matter if the Court treats Inko-Tariah's breach claim as
sounding in contract or tort.  Either way, the Court must dismiss it under the doctrine of
derivative jurisdiction.

If Inko-Tariah's claim is read as sounding in contract, then the Superior Court lacked
jurisdiction over it.  Inko-Tariah asks for $1.5 million in damages, including $500,000 in
compensatory damages.  Compl. at 6.  And the Court of Federal Claims has exclusive
jurisdiction over contract claims seeking more than $10,000.  28 U.S.C. § 1491(a)(1); *Crowley
Gov't Servs., Inc.*, 38 F.4th at 1106.

True, Inko-Tariah never specifies how much money he wants for his breach of contract
claim, rather than his tort and constitutional claims.  But even reading Inko-Tariah's Complaint
in his favor, the Court concludes that he seeks more than $10,000 for breach of contract: He
makes three common-law claims, and three constitutional claims, and then asks for $1.5 million.
Perhaps he wants $250,000 for each claim.  Or maybe he wants something different.  But the
Court cannot find that he wants $10,000 or less for his contract claim when he asks for $1.5
million total.

Reading his claim as one in tort yields the same result; the Superior Court lacked
jurisdiction and so this Court does too.  The federal district courts have exclusive jurisdiction
over such claims under the FTCA and thus have no jurisdiction when those claims are removed
under Section 1442.  *Merkulov*, 75 F. Supp. 3d at 129.

**B.**

Next, consider Inko-Tariah's constitutional claims for money damages. Such claims against the United States (or its agencies) are barred by sovereign immunity. *See Benoit v. USDA*, 608 F.3d 17, 20 (D.C. Cir. 2010); *see also Loumiet v. United States*, 828 F.3d 935, 945 (D.C. Cir. 2016) ("Federal constitutional claims for damages are cognizable only under *Bivens*, which runs against individual government officials personally."). Nor does the FTCA help Inko-Tariah; it provides no waiver of sovereign immunity for constitutional torts. *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994). So Inko-Tariah's constitutional claims are barred by sovereign immunity to the extent he seeks money damages for them.

**IV.**

Inko-Tariah also seeks injunctive relief. He wants the Court to "order the government to cease [its] nefarious practice of intercepting and confiscating his property" and to "account[] for and return[] the seized/stolen mails." Compl. at 6. But Inko-Tariah is not entitled to injunctive relief for any of his claims.

Most glaringly, he points to no waiver of sovereign immunity. And he bears the burden to do so. *Georgiades*, 729 F.2d at 833 n.4 ("It is the burden of the party claiming subject matter jurisdiction to demonstrate that it exists."); *see also Gill v. DOJ*, 875 F.3d 677, 680 (D.C. Cir. 2017) (affirming dismissal when plaintiff had pointed to no waiver of sovereign immunity in his district court briefing).

And even if Inko-Tariah's failure to meet that burden was not fatal, the Court still may not grant him an injunction because he states no claims.

The APA does not provide a cause of action because the Postal Service "is exempt from review under the [Act]." *Mittleman v. Postal Regul. Comm'n*, 757 F.3d 300, 305 (D.C. Cir.

7

2014) (cleaned up).  Nor can Inko-Tariah succeed based on non-statutory review.  "[E]ven when

a plaintiff is unable to bring his case predicated on either a specific or general statutory review

provision, he may still be able to institute a non-statutory review action."  *Id.* at 307 (cleaned up).

But that review "is quite narrow."  *Id.*

Courts ask only "whether [the Postal Service] has acted 'ultra vires.'"  *Id.* (quoting *Aid*

*Ass'n for Lutherans v. USPS*, 321 F.3d 1166, 1173 (D.C. Cir. 2003)).  That review falls into

three buckets: "(1) a straightforward question of statutory interpretation; (2) a question

concerning whether a regulation in the Manual was a valid exercise of the Postal Service's

authority; and (3) a question focusing on whether a Postal Service decision was supported by the

agency's contemporaneous justification or, instead, reflected counsel's *post hoc* rationalization."

*Sears, Roebuck & Co. v. USPS*, 844 F.3d 260, 265 (D.C. Cir. 2016) (cleaned up).

Yet "[n]one of the allegations contained in [Inko-Tariah's] . . . complaint involve[] any of

these issues, and in no other way do[es] [Inko-Tariah] identify a grant of statutory authority that

USPS's actions exceeded."  *Eagle Tr. Fund v. USPS*, 365 F. Supp. 3d 57, 67 (D.D.C. 2019).  So

any non-statutory-review claim fails.

And Inko-Tariah's constitutional claims fail on the merits.

*1. Fifth Amendment: Due Process*.  Inko-Tariah's due-process claim flops because he

never adequately alleges that *the Postal Service* purposely deprived him of his property.  At

most, he alleges that the Postal Service lost some of his packages.  And the "Due Process Clause

is simply not implicated by a *negligent* act of an official causing unintended loss of . . .

property."  *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

True, Inko-Tariah alleges that his books were "intercepted and confiscated in 2005 and

2010 by *the prison authorities* at [the prison] with the connivance of U.S.P.S. Mailroom staff."

MSJ at 4 (emphasis added).  And he also suggests that the Postal Service is "colluding with the

. . . FBI, CIA, NSA, BOP, DHS/USSS, USMS and U.S. Attorneys etc" to steal "his important

mails."  Compl. at 6.  But these conclusory allegations are not enough.  *See Iqbal*, 556 U.S. at

678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").

In support, Inko-Tariah notes only that some of the Postal Service's employees have been

convicted of stealing mail.  MSJ at 5.  Yet that does not make his alleged conspiracy plausible.

Indeed, the bulk of his Complaint points the finger at prison officials, particularly his first

psychiatrist.  *See, e.g.*, Compl. at 5 (claiming that his "greedy and rapacious" prison psychiatrist

wanted to steal his manuscript because the psychiatrist recognized its "inestimable value"); Pl.'s

Renewed Opp'n at 1, ECF No. 14 (claiming that his psychiatrist had "his eyes fixed on [Inko-

Tariah's] very unusual life story book" and that the psychiatrist "is very desperate to become rich

overnight"); Ren. Opp'n at 2 (claiming that his psychiatrist "admitted in writing, 'I want [the

manuscript] for my own enrichment'").  So Inko-Tariah's due-process claim against the Postal

Service fails.[2]

*2. Fourth Amendment.*  Inko-Tariah's Fourth Amendment claim fails for much the same

reason.  He never plausibly alleges that the alleged mail mishandling was "an intentional

acquisition of physical control" by *the Postal Service.  See Brower v. Cnty. of Inyo*, 489 U.S.

593, 596 (1989).  His passing allegations that the Postal Service was somehow complicit in mail

---

[2]  Even if Inko-Tariah had alleged purposeful conduct by the Postal Service, his claim would still fail because he points to no constitutionally inadequate process. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  He claims that the Postal Service was "unresponsive as well as uncooperative" when he tried to call them to complain.  Ren. Opp'n at 1.  But that is all.  Without more than this terse allegation, he has not stated a due-process claim.

theft are not enough.  And without well-pled facts to support his conclusion that the Postal Service helped steal his mail, Inko-Tariah does not allege an unconstitutional seizure.

Nor does Inko-Tariah adequately plead an unconstitutional search.  Indeed, the closest he gets to even a conclusory allegation is when he asks the Court to enjoin a laundry list of federal agencies from "eavesdrop[ping on]" and "surveill[ing] . . . his important mails."  Compl. at 6.  But he never pleads facts sufficient to support his claim that the Postal Service searched his mail.  So this claim fails as well.

*3. First Amendment.*  Inko-Tariah says that the Postal Service also violated his First Amendment right to freedom of speech.  Opp'n at 1.  But again, he never explains how or pleads enough facts to support that claim.

Presumably, Inko-Tariah means to claim that the Postal Service confiscated his mail to stop him from exposing dangerous prison conditions.  *See* Compl. 4–5 (alleging that the government wanted to "silence him . . . because he know[s] of their 'horrible dark secrets'").  But any such claim fails for a familiar reason.  Inko-Tariah points to no "regulation" or "target[ing]" of his speech by the Postal Service.  *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 828–29 (1995).  At most, it appears, *prison officials* stole his mail.  And thus Inko-Tariah fails to show that the Postal Service engaged in unconstitutional viewpoint or content discrimination "based on [his speech's] substantive content."  *Id.*  Lost mail is not censorship.  And Inko-Tariah plausibly pleads nothing more by the Postal Service.

So Inko-Tariah states no constitutional claims and thus may get no injunctive relief.

**V.**

Finally, the Court lacks subject matter jurisdiction over Inko-Tariah's Complaint because his allegations are frivolous.  *See Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974); *Tooley v.*

*Napolitano*, 586 F.3d 1006, 1010 (D.C. Cir. 2009).  He accuses prison staff of trying to poison

him "52 times," and says that the Department of Justice, "Federal Judges, FBI, U.S. Attorneys,

ACLU, and national media" all conspired to keep this silent.  Compl. at 2.  In closing, he asks the

Court to enjoin at least seven federal agencies from "eavesdrop[ping]" on him, "surveil[ling]"

him, and stealing his mail.  *Id.* at 6.  Inko-Tariah's allegations are "wholly incredible," and the

Court thus lacks jurisdiction.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

## VI.

For these reasons, the Court will grant the Postal Service's motion to dismiss Inko-

Tariah's Complaint.  A separate Order will issue today.


Dated: January 20, 2023                                   TREVOR N. McFADDEN, U.S.D.J.